Kerr v. Garland

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of January, two thousand twenty-three.

PRESENT:
        ROBERT D. SACK,
        JOSEPH F. BIANCO,
        ALISON J. NATHAN,
             *Circuit Judges.*
_____

KADEEN KAMAR KERR,
             *Petitioner*,

        v.                                          21-6504

MERRICK B. GARLAND, UNITED STATES
ATTORNEY GENERAL,
             *Respondent*.
_____

| | |
|---|---|
| **FOR PETITIONER:** | ROHMAH A. JAVED, Esq. (John H. Peng, *on the brief*), *for* Karen Murtagh, Executive Director, Prisoners' Legal Services of New York, Albany, NY. |
| **FOR RESPONDENT:** | IMRAN R. ZAIDI, Trial Attorney, Office of Immigration Litigation (Jennifer J. Kenney, Assistant Director; Lindsay B. Glauner, Senior Litigation Counsel, *on the brief*), *for* Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, |

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Kadeen Kamar Kerr, a native and citizen of Jamaica, seeks review of an August 27, 2021 decision of the BIA, affirming a December 15, 2020 decision of an Immigration Judge ("IJ"), which ordered his removal to Jamaica. *In re Kadeen Kamar Kerr,* No. A058 826 330 (B.I.A. Aug. 27, 2021), *aff'g* No. A058 826 330 (Immigr. Ct. Napanoch Dec. 15, 2020). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we refer to only as necessary to explain our decision.

We have reviewed the decision of the IJ as supplemented by the BIA. *See Matthews v. Barr*, 927 F.3d 606, 612 (2d Cir. 2019). We defer to the agency's definition of "crime of child abuse, child neglect, or child abandonment" under 8 U.S.C. § 1227(a)(2)(E)(i), *see Matthews*, 927 F.3d at 616, but review *de novo* whether Kerr's conviction for endangering the welfare of a child in violation of New York Penal Law ("NYPL") § 260.10(1) satisfies that definition, *see Vasconcelos v. Lynch*, 841 F.3d 114, 117 (2d Cir. 2016) ("Our consideration of questions of law and the application of law to undisputed facts is *de novo*."); *Vargas-Sarmiento v. U.S. Dep't of*

*Just.*, 448 F.3d 159, 164 (2d Cir. 2006) ("We review the BIA's interpretation of state or federal criminal laws *de novo*.").

As we have explained, "[t]o determine whether a state conviction is a removable offense as included on the INA's list, we employ the 'categorical approach,' in which we 'look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition.'" *Williams v. Barr*, 960 F.3d 68, 72 (2d Cir. 2020)(quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013)). Within this framework, "[a] state offense makes a categorical match with a generic federal offense only if a conviction of the state offense *necessarily* involved facts equating to the generic federal offense." *Id.* (internal quotation marks and citation omitted). Thus, in this analysis, "only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant." *Id.* at 73 (internal quotation marks and citation omitted). However, even if there is an apparent categorical match between the state statute and the generic federal definition, a petitioner can still prevail if he or she demonstrates that there was a "realistic probability that a state would apply the [state] statute to conduct beyond the generic definition." *Id.* at 78 (internal quotation marks and citation omitted).

3

In *Matthews*, we held that NYPL § 260.10(1) is an apparent categorical match to the BIA's definition of a crime of child abuse. 927 F.3d at 618–20. NYPL § 260.10(1) provides, in relevant part, that "[a] person is guilty of endangering the welfare of a child when . . . [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old." The agency defines crime of child abuse as "any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being." *Matthews*, 927 F.3d at 612 (quoting *Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503, 512 (B.I.A. 2008)). The agency does not require "actual harm or injury . . . so long as the state statute requires a sufficient risk of harm to a child." *Id.* Comparing these legal definitions in *Matthews*, we concluded that "[t]his is *not* a situation . . . in which the state statute, on its face, stretches further than the BIA's definition; instead, the state statute and the BIA's definition appear to be a categorical match." *Id.* at 620. To the extent that Kerr suggests that *Matthews* incorrectly gave *Chevron* deference to the BIA's interpretation of the crime of child abuse, or Kerr otherwise argues that *Matthews* was wrongly decided, we find no basis to depart from that binding precedent. *See United*

4

*States v. Gill*, 748 F.3d 491, 502 n.8 (2d Cir. 2014) ("In our Circuit, panels are bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." (internal quotation marks and citation omitted)).

Because New York's statute appears to be a categorical match with the BIA's definition, Kerr is only entitled to relief if he can demonstrate under the "realistic probability" standard "'that the State actually prosecutes the relevant offense in cases' that fall outside the federal definition." *Matthews*, 927 F.3d at 620 (quoting *Moncrieffe*, 569 U.S. at 206). More specifically, Kerr must "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which [the petitioner] argues." *Id.* (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)) (internal quotation marks omitted). Kerr asserts, based on certain testimony at his criminal trial, that *his own conviction* demonstrates that New York applies its statute in a manner broader than the BIA's generic definition. Although this narrow argument is not foreclosed by *Matthews*, *id.* at 620 ("Matthews does not argue that the facts underlying his convictions do not match the BIA's definition of a crime of child abuse."), we find Kerr's contention unpersuasive based upon the record.

5

At the outset, we reject Kerr's argument, raised for the first time in his reply brief, that *Pereida v. Wilkinson*, 141 S. Ct. 754 (2021), places the burden on the government to prove that there was no "realistic probability" that Kerr was convicted for conduct broader than the BIA's generic definition of a crime of child abuse. In *Matthews*, we determined that even though "it is the Government's burden to prove removability . . . it is a noncitizen's burden to establish a realistic probability of being convicted for conduct outside the federal definition, at least in cases where the state and federal statutes appear to be a categorical match." 927 F.3d at 618. The decision in *Pereida* — which concerned a petitioner's burden to prove that he was not convicted under a certain section of a state's divisible statute in order to demonstrate eligibility for the discretionary relief of cancellation of removal — has no bearing on the allocation of burdens under the realistic probability approach as set forth in *Matthews*.

Here, Kerr has failed to meet his burden under the "realistic probability" standard. Kerr was convicted by a jury of endangering the welfare of his infant half-sister after the police found large quantities of marijuana, loaded firearms, ammunition, and cash in his bedroom in an apartment where he lived with his infant half-sister, brother, two other adults, and two other

6

children.  At his trial, police officers testified that during the search of the apartment, the bedroom door was open, and in the bedroom they found a loaded firearm and bags of marijuana on top of Kerr's dresser,[1] as well as additional firearms and marijuana inside his dresser and closet.

Based upon this evidence, the prosecutor argued in summation that "anyone" in the house "could have had access to" Kerr's bedroom.  Certified Administrative Record at 1272.  Moreover, with respect to the requisite elements of the crime, the jury was instructed that it was required to determine whether Kerr, "on or about August 15, 2013, . . . acted in a manner likely to be injurious to the physical, mental or moral welfare of [his infant half-sister] [and] that [Kerr] did so knowingly."  *Id.* at 1304.  Thus, the State's evidence — that the police found loaded firearms and marijuana in his bedroom (including on his dresser), to which the door was ajar — along with the legal instruction provided to

---

[1]  This evidence, contrary to Kerr's argument, distinguishes his conviction from other cases where New York courts overturned a conviction or dismissed a charge under NYPL § 260.10(1).  *See*, *e.g.*, *People v. Hitchcock*, 98 N.Y.2d 586, 590, 592 (2002) (affirming the vacating of defendant's child endangerment conviction based on firearm possession where defendant made efforts to conceal the firearm that was "wrapped in rags, inside a stereo speaker hidden in a closet behind various items of clothing and bags"); *People v. Grajales*, 686 N.Y.S.2d 608, 609–10 (Crim. Ct. 1999) (dismissing child endangerment charges where there was no evidence to support the prosecution's conclusory statement that the marijuana was "out and accessible" and holding that "there must be some facts . . . to show a nexus between the presence of the marihuana in the apartment and potential or likely harm to the children").

the jury, demonstrate that Kerr's conviction falls squarely within the BIA's generic definition of a crime of child abuse, which merely "requires a sufficient risk of harm to a child." *Matthews*, 927 F.3d at 612.

Kerr points to conflicting evidence he offered at trial to support his argument that the contraband was locked in his room and was inaccessible to the infant. For example, he emphasizes that one of the adults living in the apartment testified that the officers needed a device to unlock the bedroom door during the search. However, there is no basis in the record to conclude that the jury credited Kerr's alternative version of the evidence. The mere fact that there was conflicting evidence at trial as to whether Kerr's bedroom door was locked falls far short of satisfying his burden of "demonstrat[ing] that the State actually prosecutes the relevant offense in cases that fall outside the federal definition."[2] *Matthews*, 927 F.3d at 620 (internal

---

[2] To hold otherwise would require immigration judges to conduct a mini-trial whenever there was some evidence at the criminal trial that conflicted with the government's proof, even though the jury found the petitioner guilty of the crime and the crime is an apparent categorical match. That approach is more demanding for the government than the legal standard for assessing the sufficiency of the evidence in criminal cases, *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that courts conducting review of the sufficiency of the evidence to support a criminal conviction should view the "evidence in the light most favorable to the prosecution"), and such re-litigation of the underlying conviction supporting removability is "entirely inconsistent with both the INA's text and the categorical approach," *Moncrieffe*, 569 U.S. at 200.

8

quotation marks and citation omitted). As the Supreme Court emphasized, the categorical approach's "focus on the minimum conduct criminalized by the state statute is not an invitation to apply legal imagination to the state offense; there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the [federal] definition of a crime." *Moncrieffe*, 569 U.S. at 191 (internal quotation marks and citation omitted). In short, Kerr's conviction does not demonstrate any realistic probability that New York State applies NYPL § 260.10(1) to conduct that is broader than the BIA's generic definition of a crime of child abuse. Accordingly, consistent with our holding in *Matthews*, the BIA did not err in concluding that Kerr is removable.

We have considered Kerr's remaining arguments and find them to be without merit. For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

9